**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| KENNETH E. WEAVER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-1347-N |
| | § | |
| MICHELLE PIWONSKI, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the order of reference dated June 21, 2011, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Plaintiff's Application for Preliminary Injunction and Brief in Support*, filed June 23, 2001 (doc. 9). Based on the relevant filings, evidence, and applicable law the application is **GRANTED**, in part, and **DENIED**, in part.

**I. PROCEDURAL BACKGROUND**

On May 24, 2011, plaintiff Kenneth E. Weaver ("Plaintiff"), filed his original petition in a state district court against his former girlfriend, Michelle Piwonski ("Defendant"). He claimed that after initiating a personal relationship with him through a dating organization, she subtly influenced him to gain access to his business and finances; converted valuable funds, accounts, personal property, intellectual property, appliances, vehicles, aircraft and a helicopter belonging to him and/or an entity owned and controlled by him; and conspired to accomplish the theft, conversion, and unlawful "expropriation" of hundreds of thousands of dollars in money and other property belonging to him and/or his legitimate corporations. She allegedly formed corporations on his behalf but placed herself in control of the newly formed entities; forged his name on checks and placed them

into accounts or entities controlled solely by her; and titled or attempted to title a helicopter and an aircraft purchased and funded by him.

His original petition sought a declaratory judgment, a temporary restraining order ("TRO"), a temporary injunction, and a permanent injunction. On May 24, 2011, the state court issued a TRO with an expiration date of June 7, 2011, and scheduled a hearing to determine whether the TRO should be made a temporary injunction pending a full trial on the merits. On June 6, 2011, the state court extended the TRO and continued the temporary injunction hearing until June 20, 2011, to allow for service and notice on Defendant. On June 20, 2011, before the scheduled hearing, Defendant removed the action to this Court based on diversity jurisdiction. The notice of removal stated that there was diversity of citizenship between the parties because Plaintiff had made sworn allegations in his original petition that he was a resident of Texas while Defendant was a resident of Colorado. On June 21, 2011, Plaintiff filed a emergency motion for a hearing, and the Court conducted a hearing on that date. It was determined at the hearing that the state TRO had expired on June 20, 2011, and a temporary injunction hearing was scheduled for June 24, 2011. On June 23, 2011, Defendant filed a motion to dismiss for lack of personal jurisdiction, and Plaintiff filed an application for a preliminary injunction. An evidentiary hearing was conducted on the motion for preliminary injunction June 24-25, 2011.[1]

## II. PERSONAL JURISDICTION

As noted, Defendant has moved to dismiss for lack of personal jurisdiction. "Where a challenge to jurisdiction is interposed on an application for a preliminary injunction 'the plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success

---

[1] The transcript of the evidentiary hearing will hereinafter be referred to as "R."

upon the question of jurisdiction when the action is tried on the merits.'" *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th Cir. 1985) (quoting *Visual Sciences Inc. v. Integrated Commc'ns*, 660 F.2d 56, 58 (2d Cir. 1981)); *see also Kwik Copy Corp. v. Byers*, 37 Fed. App'x. 90, 90 (5th Cir. 2002).

Personal jurisdiction over a non-resident defendant requires a determination of whether: (1) the non-resident is subject to jurisdiction under the laws of the state in which the court sits; and (2) the exercise of jurisdiction over the defendant comports with the due process requirements of the United States Constitution. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985); *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984); Fed. R. Civ. P. 4(e)(1), 4(h)(1). Because the Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the due process clause of the Fourteenth Amendment, the Court need only address the federal due process inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *see* Tex. Civ. Prac. & Rem. Code Ann. § 17.041 *et seq*. (Vernon 1997) (Texas long-arm statute).

"Exercising personal jurisdiction over a nonresident defendant is compatible with due process when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine*, 253 F.3d at 867. The "minimum contacts" aspect of the analysis can be established through contacts that give rise to general jurisdiction or those that give rise to specific

3

jurisdiction. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999).

General jurisdiction exists where the non-resident's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction is appropriate where the non-resident has purposefully directed his activities at the forum state and the litigation results from the alleged injuries that arise out of or relate to those activities. *Id.* Under either a general or specific jurisdiction analysis, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474. To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court in the forum state." *Latshaw*, 167 F.3d at 211.

Although the testimony from the evidentiary hearing established that Defendant is a resident of Colorado, it also established the purposeful contacts necessary to find a reasonable probability of success on the question of general jurisdiction over her. There was testimony that Defendant visits her daughter in Texas every other week based on her visitation rights (R. at 14, 266, 356); she has either owned or leased a house in Dallas, Texas, for almost four years now (R. at 118-119); she is currently building another house in Plano, Texas, with her alleged romantic partner (R. at 140-41, 144-46, 160, 340-42, 350, 356); she spends more time in Texas than in Colorado (R. at 266); she has been in Dallas for the past four months (R. at 151-52); she keeps and drives a car in Texas (*id.*); she has a Texas Driver's license in addition to a Colorado license, even though she testified that she lost it before moving to Colorado and does not know whether it has expired (R. at 161-62, 270-71); and she has a mailbox in Dallas in her name since August 2010, where she is still receiving mail (R. at

4

316-17).

Plaintiff's ownership of property in the forum alone would not support an exercise of general jurisdiction. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986) (citing *Shaffer v. Heitner*, 433 U.S. 186, 208-10 (1977)). Nor would her periodic visits to her daughter be enough if they are not substantial, continuous, or systematic. The determination of personal jurisdiction does not involve an examination of each of the non-resident's contacts with the forum state in isolation from one another, however. *Holt Oil*, 801 F.2d at 779. The contacts must be examined "*in toto* to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process." *Id.* Defendant's contacts, when taken together, reveal that she has maintained continuous and systematic personal contacts with Texas and should reasonably anticipate being haled into court there. Plaintiff has met his burden to establish a reasonable probability of success on the question of personal jurisdiction over Defendant for purposes of the application for preliminary injunction.

### III. PRELIMINARY INJUNCTION

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 129 S.Ct. 365, 376 (2008). To obtain a preliminary injunction, the movant must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Tex. Midstream Gas Servs., LLC. v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010) (citing *Winter*, 129 S.Ct. at 374). The party seeking the preliminary injunction bears the burden of persuasion on all four requirements. *Bluefield Water Assoc., Inc. v. City of Starkville, Miss.*, 577

5

F.3d 250, 253 (5th Cir. 2009).

## A. <u>Likelihood of Success</u>

To establish the first element of likelihood of success on the merits, a "plaintiff must present a prima facie case but need not show that he is certain to win." *Janvey v. Alguire*, 628 F.3d 164, 175 (5th Cir. 2010). The first element is assessed by looking at standards provided by substantive law. *Id.* (citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990)). Under Texas law, establishing a claim for conversion requires a showing that the defendant wrongfully exercised dominion or control over the plaintiff's property to the exclusion of, or inconsistent with, the plaintiff's right of possession. *50-Off Stores, Inc. v. Banques Paribas (Suisse)*, 180 F.3d 247, 253 (5th Cir. 1999); *see also Robinson v. Nat'l Autotech, Inc.*, 117 S.W.3d 37, 39 (Tex. App.—Dallas 2003, pet. denied).

Based on the evidentiary hearing, Plaintiff is likely to succeed on the merits of his conversion claim with respect to certain items of the property at issue. There was testimony that the Alouette helicopter and the Mitsubishi airplane at issue were purchased by Plaintiff and owned by Paysmart Payment Solutions Inc. ("Paysmart"), a company that was allegedly created at his request for owning these assets. (R. at 128-29, 133-34.) There was also evidence that the 2007 BMW, the 2006 Jeep Commander, and the 2001 Ford Excursion, were registered to Tricolor (R. at 162, 286, 355, 463), a company owned by Plaintiff at the time the vehicles were purchased (R. at 93, 290-91). It was undisputed that the racing equipment, the conference room table, and the clothing and shoes at issue belonged to him. (R. at 463.) Plaintiff testified and presented evidence that he had purchased the appliances[2] himself. (R. at 156-57.) Finally, it was undisputed that Plaintiff did not give these

---

[2] The appliances include the fifty watt bathroom lighting system; ceiling fan; ceiling panels, living room lighting system; forty two Optika crystal accessories; and the new kitchen appliances.

6

items to Defendant as outright gifts. (R. at 463-64.) Given these facts, Plaintiff has shown that any unauthorized dominion or control over the Alouette helicopter, the Mitsubishi airplane, the 2007 BMW, the 2007 Jeep Commander, the Ford Excursion, the racing equipment, the conference room table, the clothes, the shoes, and the appliances likely amounts to conversion.

There was also testimony at the evidentiary hearing that Defendant had formed two entities, Paysmart and Ken Weaver Holdings, Inc., on Plaintiff's behalf and at his request, but did not include him as an owner or officer of the entities. (R. at 136, 211-212, 256, 326-28, 462, 464.) Further, Plaintiff's handwriting expert opined that eleven of the twelve checks she examined had forged signatures of Plaintiff, and that two of the checks very well might have been written by Defendant because there were similarities between the signature purporting to be Defendant's and the signature purporting to be Plaintiff's on those checks. (R. at 21-22, 26-36.) There was testimony that Defendant had opened bank accounts in her name only, and that she was depositing Plaintiff's money or proceeds of his assets into those accounts. (R. at 138-39.) There was also testimony that she had sold or was seeking buyers for other assets that belonged to Plaintiff, including the helicopter. (R. at 110, 181-83, 335-36, 363-64.)

Given this evidence, Plaintiff has shown a likelihood of success on the merits as to these items and has therefore satisfied the first element of the preliminary injunction test.

**B. Irreparable Injury**

To satisfy the second element of the preliminary injunction standard, the plaintiff must show "that if the district court denied the grant of a preliminary injunction, irreparable harm would result." *Janvey*, 628 F.3d at 164 (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir.1985)). Injuries are irreparable only when they "cannot be undone through monetary remedies."

*Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008) (citation omitted).

Plaintiff contends that if a preliminary injunction is not issued, Defendant will be able to convey the property to bonafide purchasers and move the proceeds or funds to undisclosed or inaccessible locations. (Appl. at 6-7.) In that scenario, he argues, a judgment for money damages would be meaningless and unenforceable because Defendant does not have other assets sufficient to satisfy a judgment. (*Id.*) He further argues that this is a matter of a property-owner seeking to preserve his stolen property and not a case of a creditor seeking a pre-judgment attachment to secure an eventual judgment. (*Id.*) Based on these arguments as well as the testimony that Defendant was continuing or trying to appropriate, liquidate and/or dispose of Plaintiff's assets, Plaintiff has shown a substantial threat of irreparable injury if the requested injunction is not issued.

## C. **Balance of Equities**

Plaintiff must also show that the threatened injury outweighs any harm the injunction might cause. *See Winter*, 129 S.Ct. at 376. He argues that even though the preliminary injunction might inconvenience Defendant, the substantial harm to him in case his property disappears far outweighs such inconvenience. (*Id.* at 7.) Plaintiff has met his burden with respect to the third element of the preliminary injunction standard and has shown that the balance of equities weighs in his favor.

## D. **Public Interest**

As to the final element of the preliminary injunction test, Plaintiff argues that freezing the disputed assets poses no harm to the public. (*Id.*) Allowing Defendant to convey property, however, could jeopardize potential purchasers if they are required to prove their good faith, and could spawn multiple actions if Plaintiff is required to track down his property. (*Id.*) Given these arguments, a preliminary injunction will serve the public interest.

Plaintiff has carried his burden to show that a preliminary injunction should issue in this case.

## IV. SCOPE OF THE INJUNCTION

Based on the evidence presented at the preliminary injunction hearing, Defendant and all others acting in concert with her, should only be restrained from:

1. Acting or purporting to act on behalf of or in the name of Plaintiff and/or any of his entities, including but not limited to signing his name, or purporting to sign on his behalf any check or other document of any kind. Plaintiff's entities include any entities he had before his relationship with Defendant began, and any entities formed on his behalf and at his request, i.e., Ken Weaver Holdings, Inc., and Paysmart.

2. Creating disseminating or using in any way documents purporting to be resolutions or minutes of the Board of Directors or Stock Certificates of any of Plaintiff's entities, real or fictitious, including any entities he had before his relationship with Defendant began and any entities formed on his behalf and at his request, i.e. Ken Weaver Holdings, Inc., and Paysmart.

3. Selling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating the Alouette helicopter, the Mitsubishi airplane, the 2007 BMW, the 2007 Jeep Commander, the Ford Excursion, the racing equipment, the conference room table, the clothes, the shoes, and the appliances.

4. Signing or endorsing Plaintiff's name on any negotiable instrument, check, or draft, such as tax refunds, insurance payments, and dividends, or attempting to negotiate any negotiable instrument payable to Plaintiff without the personal signature of Plaintiff.

5. Opening or redirecting the mail addressed to Plaintiff.

The remaining relief requested in Plaintiff's application for preliminary injunction should be denied.

## V. RECOMMENDATION

*Plaintiff's Application for Preliminary Injunction* should be **GRANTED**, in part, and **DENIED**, in part.

**SO RECOMMENDED** on this 15th day of July, 2011.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE