**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **KENNETH E. WEAVER,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-1347-N |
| | § | |
| **MICHELLE PIWONSKI,** | § | |
| | § | |
| Defendant. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated June 21, 2011, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Defendant Michelle Piwonski's Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support Thereof*, filed June 23, 2011 (doc. 8). Based on the relevant filings, evidence, and applicable law, the motion should be **DENIED**.

### I. BACKGROUND

**A. Procedural Background**

On May 24, 2011, Kenneth E. Weaver ("Plaintiff"), filed his original petition in state district court against his former girlfriend, Michelle Piwonski ("Defendant"). He claimed that after initiating a personal relationship with him through a dating service, Defendant subtly influenced him to gain access to his business and finances; converted valuable funds, accounts, personal property, intellectual property, appliances, vehicles, aircraft and a helicopter belonging to him or an entity owned and controlled by him; and conspired to accomplish the theft, conversion, and unlawful "expropriation" of hundreds of thousands of dollars in money and other property belonging to him

or his legitimate corporations. She allegedly formed corporations on his behalf but placed herself in control of the newly formed entities; forged his name on checks and placed them into accounts or entities controlled solely by her; and titled or attempted to title a helicopter and an aircraft purchased and funded by him.

On June 20, 2011, Defendant removed the action to this court based upon diversity jurisdiction. Her notice of removal stated that based on the allegations in the original petition, Plaintiff was resident of Texas, while she was a resident of Colorado. On June 23, 2011, she moved to dismiss this action for lack of personal jurisdiction on grounds that she does not have sufficient contacts with Texas. Plaintiff filed a motion for a preliminary injunction on the same day, and an evidentiary hearing was conducted on that motion on June 24-25, 2011.[1]

## B. Hearing Evidence

The testimony at the hearing showed that both parties were residents of Texas when they met in August 2008. (R.[2] at 118-19, 413.) They formed a romantic relationship in Texas and established several common residences in Dallas County, Texas. (R. at 118-19.) Two of their residences were houses that Defendant had contracted to use in exchange for keeping them furnished for showings to prospective buyers. (R. at 124-25.) To help meet that obligation, Plaintiff moved some of his furniture, household items, clothes, and other belongings into those houses. (R. at 124-25, 166-71.) The parties received their mail at a mailbox Defendant had leased in Dallas, Texas. (R. at 316-17.)

Although the parties moved to Colorado in October 2009, Defendant continued to maintain

---

[1] The Court found that Plaintiff had met his burden to establish a reasonable probability of success on the question of personal jurisdiction over Defendant for purposes of the application for preliminary injunction. (*See* doc. 16 at 5.)

[2] The transcript of the evidentiary hearing is referred to as "R."

her contacts with Texas. (R. at 413.) She visits Texas every other week to see her daughter and spends more time in Texas than in Colorado. (R. at 14, 266, 356.) She continues to maintain her residence in Texas and lease the mailbox in Dallas, Texas. (R. at 4, 119, 272, 317.) She keeps and drives a car in Texas (R. at 151-52), and has a Texas Driver's license in addition to a Colorado license, although she testified that she had lost it before she moved to Colorado and did not know whether it had expired (R. at 161-62, 270-71). She is currently building another house in Plano, Texas, with her alleged romantic partner, and has been in Dallas, Texas, for the past four months. (R. at 140-46, 151-52, 160, 340-42, 350-51, 356.) She has been depositing funds in her Chase Bank account at either a Texas or Colorado location for the past two years. (R. at 309-14.)

There was testimony that some of the property at issue in this action was either purchased in Texas, or is in Defendant's possession in Texas. The appliances at issue were purchased by Plaintiff in Dallas, Texas, moved to Colorado by the parties, and later driven back to Texas by Defendant in March, 2011. (R. at 156-57, 334-39.) Defendant sold the appliances to her alleged romantic partner in Dallas for one third their retail cost, and deposited the funds in her personal account in either Texas or Colorado. (R. at 334-39.) Some of the appliances are scheduled to be placed in her new house in Plano, Texas (R. at 341-42), and some of the furniture and other items at issue in this case are also in a residence she maintains in Texas (R. at 166-71). She also has in her possession in Texas, the 2006 Jeep Commander, the 2007 BMW M-6, and the BMW X-5, all of which are vehicles at issue in this action. (R. at 272-77.) The allegedly forged bills of sale for some of the vehicles are written on Texas forms. (R. at 453-54.)

There was also testimony that Defendant picked up some of the allegedly forged checks from the mailbox in Dallas, Texas, and deposited them into her personal accounts at several branches of

3

Chase Bank in Dallas, Texas. (R. at 309-13, 318-23.) Plaintiff testified that around July or August of 2010, she picked up another check in the amount of $232,213.14 from their residence in Dallas, Texas, and deposited it into her personal account in Key Bank, Texas. (R. at 238-41, 257-60.) He alleged that she is building the house in Plano, Texas, with funds belonging to him. (R. at 140, 144.) He also testified that almost all of the property at issue was either purchased in Texas or purchased with funds originating in Texas. (R. at 183-84.)

## II. ANALYSIS

Defendant moves to dismiss for lack of personal jurisdiction on two grounds: (1) she does not have sufficient minimum contacts with Texas, and (2) the assumption of jurisdiction over her would offend traditional notions of fair play and substantial justice.

Personal jurisdiction over a non-resident defendant requires a determination of whether: (1) the non-resident is subject to jurisdiction under the laws of the state in which the court sits; and (2) the exercise of jurisdiction over the defendant comports with the due process requirements of the United States Constitution. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985); *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that she would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984); *see also* Fed. R. Civ. P. 4(e)(1), 4(h)(1). Because the Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the due process clause of the Fourteenth Amendment, the Court need only address the federal due process inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); Tex. Civ. Prac. & Rem. Code Ann. § 17.041 *et seq*. "Exercising personal jurisdiction over a nonresident defendant is

compatible with due process when (1) that defendant has purposefully availed [herself ]of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine*, 253 F.3d at 867.

## A. Minimum Contacts

The "minimum contacts" prong of the analysis is satisfied when a defendant "purposefully avails [herself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). There are two types of minimum contacts: contacts giving rise to general jurisdiction and those giving rise to specific jurisdiction. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). General jurisdiction exists where the non-resident's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction is appropriate where the non-resident has purposefully directed his activities at the forum state and the litigation results from the alleged injuries that arise out of or relate to those activities. *Id*. The plaintiff has the burden of establishing minimum contacts. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). Where, as here, the court has conducted a pre-trial evidentiary hearing, the plaintiff must prove minimum contacts by a preponderance of the evidence. *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986).

1. General Jurisdiction

A court may assert general jurisdiction over a nonresident defendant when the defendant's contacts are substantial, continuous, and systematic. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colombia*, 466 U.S. at 414). In determining whether general jurisdiction exist, the court does not examine each of the non-resident's contacts with the forum state in isolation from one another, but examines them "*in toto* to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process." *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986).

Defendant's contacts with Texas, when taken together, are substantial, continuous, and systematic, and such that she should reasonably anticipate being haled into court here. The testimony presented at the evidentiary hearing showed that she visits Texas every other week and spends more time in Texas than in Colorado; continues to maintain a residence in Texas; has been building another house in Texas; spends more time in Texas than in Colorado; keeps and drives a car in Texas; has a Texas Driver's license in addition to a Colorado license; has a mailbox in Dallas, where she is still receiving mail; has been depositing funds in her Chase Bank account at either a Texas or Colorado location for the past two and a half years; has been in Texas for the past four months; has some of the property at issue in her possession in Texas; and has picked up or deposited some of the allegedly forged checks in Texas. Given this testimony, Plaintiff has proved by a preponderance of the evidence the purposeful contacts necessary to establish general jurisdiction over Defendant.

2. Specific Jurisdiction

As discussed, specific jurisdiction over a nonresident defendant exists when a plaintiff's

claims against the defendant arise out of or relate to activities that the defendant purposefully directed at the forum state. *Burger King*, 471 U.S. at 472 (1985). Specific jurisdiction is a claim-specific inquiry and requires less pervasive contacts with the forum state than general jurisdiction. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

Here, Plaintiff's claim for conversion[3] arise out of or relate to Defendant's contacts with Texas. The testimony showed that Defendant had in her possession in Texas a substantial amount of the property at issue, including vehicles, appliances, furniture, and other personal items allegedly belonging to Plaintiff. Defendant herself testified that she moved appliances purchased by Plaintiff from Colorado to Texas, sold them to her alleged boyfriend in Texas, deposited the funds in her personal accounts in either Texas or Colorado, and is going to place those appliances in her new home in Texas. There was also testimony that the 2006 Jeep Commander, the 2007 BMW M-6, the BMW X-5, the furniture, and other personal items at issue, were in her possession in Texas. There was evidence that some of the bills of sale for the vehicles were allegedly forged by her on Texas forms. The parties testified that she picked up some of the allegedly forged checks from their mailbox in Texas and deposited them into her personal accounts at several branches of Chase Bank in Dallas, Texas. Plaintiff testified that Defendant picked another check in the amount of $232,213.14 from their residence in Texas, and deposited it into her personal account in Key Bank, Texas, and that she is building a house in Texas with funds belonging to him.

Defendant contends that despite these contacts, the exercise of specific jurisdiction in Texas is improper because a majority of the activities giving rise to Plaintiff's claims occurred in Colorado.

---

[3] Conversion occurs when a person wrongfully exercises dominion or control over another's property to the exclusion of, or inconsistent with his right of possession. *50-Off Stores, Inc., v. Banques Paribas (Suisse)*, 180 F.3d 247, 253 (5th Cir. 1999).

Even if a majority of those events did occur in Colorado, the exercise of personal jurisdiction in Texas would not be improper. As noted by the Fifth Circuit, the exercise of specific jurisdiction is proper where at least some of the allegations forming the lawsuit arise out of the defendant's contacts with the forum state. *See Streber v. Hunter*, 221 F.3d 701, 718 (5th Cir. 2008); *see also See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999) (even a single act by the forum state giving rise to the plaintiff's cause of action can support a finding of minimum contacts). Since the evidence presented at the evidentiary hearing shows that Plaintiff's claims arise out of or relate to at least some of Defendant's contacts with Texas, it is proper to exercise specific jurisdiction over her.

**B. Fair Play and Substantial Justice**

Where, as here, the plaintiff meets his burden of proving minimum contacts, the defendant then has the burden of demonstrating that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *See Wien Air*, 195 F.3d at 215. In order to meet that burden, the defendant must make "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. These considerations include the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and "the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987) (citing *World–Wide Volkswagen*, 444 U.S. at 292). "Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice where the nonresident defendant has purposefully established minimum contacts with the forum state." *Crawford v. Lee*, 2011 WL

2455658, at *3 (N.D. Tex. 2011) (citations omitted); *see also Wien Air*, 195 F.3d at 215.

Defendant argues that the defense of this suit in Texas would be unduly burdensome to her because she does not reside in Texas, and owns and manages a business in Colorado that requires her continued attention. She also argues that it would be more efficient to litigate this case in Colorado because a majority of events giving rise to this lawsuit occurred there, and a majority of the property at issue is located there, and was combined, purchased, transferred, sold, or stolen there. She finally argues that continuing this litigation in the presence of a substantially related litigation in Colorado will lead to duplication, inconsistent rulings, and piecemeal resolution of the issues.

Contrary to these assertions, the evidence shows that a substantial amount of events giving rise to this litigation occurred in Texas, and almost all of the property at issue originated and is located here, mostly in Defendant's possession. Additionally, Defendant has not made a compelling argument that she will be burdened by this litigation. Based on the testimony from the hearing, she maintains a residence in Texas and frequently visits Texas to see her daughter and to oversee the construction of her new house. She has also not made a compelling case that the Colorado case is substantially related to this case. Finally, given the overwhelming amount of testimony concerning Plaintiff's purposeful contacts with Texas, the exercise of personal jurisdiction over her would not offend traditional notions of fair play and substantial justice.

### III. RECOMMENDATION

Defendant's motion to dismiss for lack of personal jurisdiction should be **DENIED**.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**SO RECOMMENDED** on this 23rd day of July, 2011.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE